UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| RONNIE E. VANHECK, By and Through His Legal Guardian and Father, Ronnie Vanheck | Plaintiff |
| v. | Civil Action No. 3:17-cv-00653-RGJ-RSE |
| MARION COUNTY, KENTUCKY, ET AL. | Defendants |

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Ronnie E. Vanheck, by and through his guardian and father Ronnie Vanheck, sues Defendants Marion County, Kentucky, Washington County, Kentucky, J. Barry Brady, and Brad Langford alleging negligence and/or gross negligence (Count I) and cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and the Civil Rights Act of 1871 (Count II). [DE 1 at ¶ 32–37; DE 64 at ¶¶ 34–39]. Defendants move to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). [DE 65]. Briefing is complete, and the motion is ripe. [*See* DE 68; DE 74]. For the reasons below, the Court **GRANTS IN PART and DENIES IN PART** Defendants' motion.

### FACTUAL BACKGROUND[1]

While Vanheck was incarcerated in the custody of the Marion County Detention Center (the "MCDC"), the MCDC took Vanheck to work at the Washington County Recycling Center (the "WCRC") as part of the Class D Community Service Work Program. [DE 64 at ¶ 9]. Langford, the WCRC Coordinator, and employees who worked under his supervision, ordered

---

[1] The facts in the complaint are accepted as true for resolving Defendants' motion. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012).

1

Vanheck to climb on top of and work around a large piece of machinery that baled cardboard (the "Machine"). [*Id.* at ¶ 10]. Langford and his employees did not train Vanheck on how to safely operate the Machine, provide Vanheck with safety equipment to use when operating it, or supervise Vanheck after ordering him to climb onto the Machine. [*Id.* at ¶¶ 11–13]. Vanheck had diagnosed mild mental retardation and attention deficit disorder. [*Id.* at ¶¶ 14–15]. Langford, Brady (the Marion County Jailer), and their employees knew of Vanheck's limited abilities. [*Id.*].

While working on the Machine, Vanheck injured his hand. [*Id.* at ¶ 16]. Surgeons sought to reattach the fourth and fifth left-hand fingers that Vanheck lost while operating the Machine, but Vanheck aspirated, went into cardiac arrest, and entered a comatose state. [*Id.* at ¶ 17]. The reattachment surgery was stopped without Vanheck's fingers being reattached. [*Id.*]. Vanheck awoke several days later permanently disfigured and suffering from permanent brain damage. [*Id.* at ¶ 18]. He has since been found to have lost significant intellectual and physical abilities. [*Id.*]. Vanheck continues to experience pain from his injuries and has had a legal guardian appointed to manage his affairs. [*Id.* at ¶¶ 19–20].

Vanheck, through his guardian, sued Marion County, Washington County, Brady, and Langford alleging negligence and/or gross negligence (Count I) and cruel and unusual punishment in violation of the Eighth Amendment and the Civil Rights Act of 1871 (Count II). [DE 1 at ¶¶ 32–37; DE 64 at ¶¶ 34–39]. Defendants answered [DE 7] and later filed a third-party complaint against Waste Processing Equipment, Inc., Marathon Reduction Solutions, LLC, and Osage Express, Inc. [DE 62]. It alleges that the third-party defendants' "improper installation, service, maintenance, distribution, sale, and/or failure to adequately warn foreseeable users of the foreseeable dangers when the subject baler was used as it was intended" caused Vanheck's injuries.

[DE 62 at ¶ 7]. Defendants now move to dismiss Vanheck's claims under Rule 12(b)(6). [DE 65]. Vanheck filed a timely response [DE 68], and Defendants filed a timely reply [DE 74].

## LEGAL STANDARD

The parties disagree about the appropriate legal standard for Defendants' motion. Vanheck asserts that Defendants' motion is untimely under Rule 12(b) because Defendants have already filed an answer to his initial complaint. [DE 68 at 668]. Vanheck also asserts that the Court should not construe the motion as a Rule 12(c) motion for judgment on the pleadings because the pleadings are not closed as long as the third-party defendants have not filed responsive pleadings [*Id.* at 669–70]—an argument that is moot since the third-party defendants have now filed answers [*See* DE 67; DE 71; DE 77].[2] Meanwhile, Defendants argue that they have not filed an answer to Vanheck's *amended* complaint, and their motion is thus properly analyzed under Rule 12(b)(6). [DE 74 at 711–12].

Rule 12(b) requires that a motion asserting a 12(b)(6) defense "be made before pleading." Fed. R. Civ. P. 12(b). Even so, as a matter of practice, a 12(b)(6) motion erroneously filed after an answer "may be properly considered as one for judgment on the pleadings under [Rule 12(c)], and evaluated, nonetheless, under the standards for dismissal under Rule 12(b)(6)." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 n.1 (6th Cir. 1988) (citing *Republic Steel Corp. v. Pennsylvania Engineering Corp.*, 785 F.2d 174, 182 (7th Cir. 1986); *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1038 (6th Cir. 1979); 5 C. Wright & A. Miller, Federal Practice &

---

[2] Vanheck also argues that Defendants waived the right to have the Court rule on a motion to dismiss before discovery because the parties have agreed to discovery deadlines. [DE 68 at 671–71]. Vanheck cites no support for this argument. The formation of Rule 16 scheduling orders is standard practice and does not affect a party's ability to file dispositive motions.

Procedure § 1367 at 688–89 (1969); Fed. R. Civ. P. 12(h)(2)). Thus, the same standard applies whether Defendants' motion is analyzed under Rule 12(b)(6) or Rule 12(c).[3]

Rule 12(b)(6) requires a court to dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S.

---
[3] A Rule 12(b) or 12(c) motion will be construed as one for summary judgment if the motion addresses matters outside the pleadings. Fed. R. Civ. P. 12(d). Vanheck asserts that Defendants' motion does so. [DE 68 at 674–77]. He is incorrect. The portions of Defendants' motion that Vanheck cites instead discuss, among other things, the legal standards for immunity and make legal arguments. [*See* DE 65-1]. Because the motion does not address matters outside the pleadings, it is properly analyzed under the Rule 12(b)(6) standard. *Scheid*, 859 F.2d at 436 n.1.

at 556). "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claim[s] made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

## DISCUSSION

### A. Negligence and/or Gross Negligence (Count I)

Vanheck asserts negligence claims against Brady and Langford in both their official and individual capacities. [DE 64 at ¶¶ 34–36]. Brady and Langford respond that they are entitled to both absolute and qualified official immunity. [DE 65-1 at 611].

*i. Absolute Official Immunity*

First, Brady and Langford argue that absolute official immunity protects them in their official capacities from Vanheck's negligence claims. [*Id.*]. Immunity "is an inherent attribute of a sovereign state that precludes the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity." *Yanero v. Davis*, 65 S.W.3d 510, 517 (Ky. 2001); *see also Alden v. Me.*, 527 U.S. 706, 755 (1999). State agencies are entitled to governmental immunity, which is an extension of the Commonwealth's sovereign immunity. *Univ. of Louisville v. Rothstein*, 532 S.W.3d 644, 647 (Ky. 2017). "It is well established that 'Kentucky counties are cloaked with sovereign immunity.'" *Edmonson Cty. v. French*, 394 S.W.3d 410, 414 (Ky. Ct. App. 2013) (quoting *Lexington–Fayette Urban County Government v. Smolcic*, 142 S.W.3d 128, 132 (Ky. 2004)). And where an officer or employee of a county is sued in his official capacity, the officer's or employee's actions are afforded the same immunity to which the county itself would be entitled. *Yanero*, 65 S.W.3d at 522.

Governmental immunity extends to tort claims. *Univ. of Louisville v. Martin*, 574 S.W.2d 676, 677 (Ky. Ct. App. 1978) (citing *Foley Const. Co. v. Ward*, 375 S.W.2d 392 (Ky. 1963); *All-Am. Movers, Inc. v. Kentucky ex rel. Hancock*, 552 S.W.2d 679 (Ky. Ct. App. 1977)). As county employees, Brady and Langford are thus immune from tort liability absent a waiver of immunity. *Edmonson Cty.*, 394 S.W.3d at 414. The Kentucky General Assembly has never expressly stated or otherwise suggested that it intends to waive sovereign immunity for tort claims. Faced with such claims, courts have found that no waiver exists. *See, e.g.*, *Tinch v. Jefferson Cty. Pub. Sch. Sys.*, No. 3:12-CV-844-DJH, 2016 WL 1574149, at *4 (W.D. Ky. Apr. 19, 2016) (dismissing a defamation claim under Kentucky law because sovereign immunity had not been waived); *Wardle v. Lexington-Fayette Urban Cty. Gov't*, No. 2005-CA-001296-MR, 2006 WL 2788951, at *4 (Ky. Ct. App. Sept. 29, 2006) (affirming summary judgment dismissing an IIED claim because sovereign immunity had not been waived). Vanheck's tort claims against the Brady and Langford in their official capacities are therefore dismissed.

### ii. Qualified Official Immunity

Next, Brady and Langford argue that qualified official immunity protects them in their individual capacities from Vanheck's negligence claims. [DE 65-1 at 611]. "[P]ublic officers and employees are entitled to 'qualified official immunity' for negligent conduct when the negligent act or omissions were (1) discretionary acts or functions, that (2) were made in good faith (*i.e.*[,] were not made in 'bad faith'), and (3) were within the scope of the employee's authority." *Rowan Cty. v. Sloas*, 201 S.W.3d 469, 476 (Ky. 2006), *as corrected* (Sept. 26, 2006) (citing *Yanero*, 65 S.W.3d at 522). But "no immunity is afforded for the negligent performance or omissions of a ministerial act, or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive, *i.e.,* again the 'bad faith' element." *Id.* (citing

6

*Yanero*, 65 S.W.3d at 523). "Once the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act [was in bad faith]." *Yanero*, 65 S.W.3d at 523.

Vanheck alleges that Brady and Langford were negligent in failing to supervise Vanheck's use of the Machine and selecting him to participate in the Class D Work Program. [DE 64 at ¶¶ 25–31]. Kentucky courts have found that the supervision of inmates and the selection of inmates for participation in a Class D Work Program are discretionary functions. *See Sloas*, 201 S.W.3d at 480; *Romans v. Johnson*, No. 2016-CA-000941-MR, 2017 WL 3129235, at *3 (Ky. Ct. App. July 21, 2017), *review denied* (June 6, 2018); *Stearman v. Knight*, No. 2013-CA-000208-MR, 2015 WL 2357359, at *4 (Ky. Ct. App. May 15, 2015).

Defendants have thus shown *prima facie* that the relevant acts were discretionary, and the burden shifts to Vanheck to show "by direct or circumstantial evidence that the discretionary act [was in bad faith]." *Yanero*, 65 S.W.3d at 523. In similar cases, the Court has found that "it was inappropriate upon a motion to dismiss pursuant to Rule 12(b)(6) to determine whether the defendant acted in good faith without giving the plaintiff an opportunity to present evidence that supported his pleadings." *Walden v. Pryor*, No. 5:18-CV-171-TBR, 2019 WL 2441838, at *6 (W.D. Ky. June 11, 2019) (citing *Jackson v. Jernigan*, No. 3:16-CV-00750-JHM, 2017 WL 1962713, at *8 (W.D. Ky. May 11, 2017), *appeal dismissed*, No. 17-5671, 2017 WL 6345757 (6th Cir. Aug. 30, 2017)); *see also Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015). Here, discovery is not complete, and Vanheck has not had an opportunity to present evidence to support his pleadings. The Court therefore declines to find that Defendants are entitled to qualified immunity at this time.

**B.     Cruel and Unusual Punishment (Count II)**

Vanheck alleges that "Defendants' conduct towards Plaintiff . . . constituted cruel and unusual punishment and also deprived him of his right of due process of law, in violation of the Eighth Amendment to the United States Constitution, and the Civil Rights Act of 1871." [DE 64 at ¶ 38]. Defendants argue that (1) Brady and Langford are entitled to federal qualified immunity; (2) Vanheck identifies no policy or custom of Marion County or Washington County (the "Counties") that would support municipal liability; and (3) he fails to state a viable cause of action for violating his Eighth Amendment rights. [DE 65-1 at 617].[4]

*i. Qualified Immunity*

First, Defendants argue that federal qualified immunity protects Brady and Langford from Vanheck's Eighth Amendment claim. [*Id.* at 618]. Much like state-law immunity, federal "[q]ualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). When advanced by a defendant, qualified immunity is a threshold question of law appropriately determined at the earliest stage of the proceeding. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

---

[4] Defendants also argue that Vanheck's § 1983 claim fails because § 1983 is not a source of substantive rights. [DE 65-1 at 617]. While Defendants are correct that § 1983 is not a source of substantive rights, Vanheck does not seek to bring a separate § 1983 claim; § 1983 is merely the mechanism through which he seeks relief for the alleged Eighth Amendment violation.

8

That said, the Sixth Circuit has found that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss based on qualified immunity. Although an officer's 'entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point,' . . . that point is usually summary judgment and not dismissal under Rule 12." *Wesley*, 779 F.3d at 433–34 (citations and internal quotation marks omitted). This is because the fact-intensive nature of the test for qualified immunity makes it "difficult for a defendant to claim qualified immunity on the pleadings *before discovery*." *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring) (emphasis in original). In other words, "[a]bsent any factual development beyond the allegations in a complaint, a court cannot fairly tell whether a case is 'obvious' or 'squarely governed' by precedent, which prevents [the court] from determining whether the facts of th[e] case parallel a prior decision or not for purposes of determining whether a right is clearly established." *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019) (citation and internal quotation marks omitted).

This case presents such a scenario. The dispute here centers on whether Brady and Langford behaved objectively unreasonably while Vanheck was under their control. [*See* DE 65-1 at 619–20; DE 68 at 683–84]. That dispute "involves the resolution of facts more appropriately dealt with at the summary-judgment stage or at trial." *Mills v. Barnard*, 869 F.3d 473, 487 (6th Cir. 2017). Additional facts about Brady's and Langford's knowledge and behavior around the time of Vanheck's injuries are necessary for the Court to analyze the reasonableness of their behavior and to consider analogous precedent. Defendants' motion is therefore denied to the extent that it seeks dismissal of Vanheck's Eighth Amendment claim on qualified immunity grounds.

*ii.* Monell *Claim*

Second, Defendants argue that Vanheck's Eighth Amendment claims against the Counties fail because Vanheck identifies no policy or custom leading to his injuries. [DE 65-1 at 621]. "When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation." *Lotz v. Buck*, No. 4:12CV-P131-M, 2013 WL 1742600, at *2 (W.D. Ky. Apr. 23, 2013) (citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120–21 (1992)). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Thus, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. "[T]he touchstone of 'official policy' is designed to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (citation and internal quotation marks omitted).

To establish that a policy or custom caused a plaintiff's injuries, the plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to the execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citation omitted). And "a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express

municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)). At the pleading stage, a plaintiff must "'plead[] factual content that allows the court to draw the reasonable inference' that the [county] maintained a policy, custom, or practice" that deprived him of his constitutional rights. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Conclusory allegations "devoid of further factual enhancement" are insufficient. *Iqbal*, 556 U.S. at 678; *see also D'Ambrosio v. Marino*, 747 F.3d 378, 388 (6th Cir. 2014).

Consequently, district courts within the Sixth Circuit have concluded that plaintiffs are "required to identify the practice or policy that forms the basis of their [*Monell*] claim." *Ghaster v. City of Rocky River*, No. 1:09-cv-2080, 2010 WL 2802685, at *7 (N.D. Ohio May 12, 2010); *see also Vidal v. Lexington Fayette Urban Cty. Gov.*, 2014 WL 4418113, at *3 (E.D. Ky. Sep. 8, 2014) ("[A] complaint must contain more than bare statements that the alleged constitutional violation was caused by a policy or custom to survive a motion to dismiss."); *Kustes v. Lexington-Fayette Urban Cty. Gov.*, Civil Action No. 5:12-323, 2013 WL 4776343, at *5 (E.D. Ky. Sep. 3, 2013) ("The Plaintiff must describe what the official custom or policy was and describe how it was violated."); *Hutchison v. Met. Gov. of Nashville and Davidson Cty.*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010) (dismissing *Monell* claim because the plaintiff failed to "include any facts related to a municipal policy on probable cause . . . or a municipal custom, policy or practice").

Vanheck's complaint vaguely refers to conduct that was a "pattern of ignoring the safety of inmates" based on "customs and practices of Defendants . . . systematically applied" to MCDC inmates working at WCRC. [DE 64 at ¶ 33]. It does not, however, point to specific facts supporting its assertions that these customs and practices existed. For example, it does not discuss

"what these policies or customs regarding training and supervision were, why they were inadequate, and how they contributed to the violation of [Vanheck's] constitutional rights." *Phillips v. PTS of Am.*, LLC, No. 3:17-CV-00603-JHM, 2017 WL 4582801, at *2 (W.D. Ky. Oct. 13, 2017); *see also Stigall v. Louisville Jefferson Cty. Metro Gov't*, No. 3:18-CV-168-CRS, 2018 WL 4775506, at *8 (W.D. Ky. Oct. 3, 2018). Vanheck's complaint thus fails to meet the pleading standard required for *Monell* claims, and Defendants' Motion to Dismiss Count II as applied to the Counties is granted.

### iii. Eighth Amendment Violation

Finally, Defendants argue that the complaint fails to state an Eighth Amendment claim against Brady and Langford. [DE 65-1 at 624]. "[T]o maintain an Eighth Amendment claim based on a failure to prevent harm, [a plaintiff] 'must show that he [was] incarcerated under conditions posing a substantial risk of serious harm' (the 'objective component'), and that [the defendants] acted with 'deliberate indifference' to that risk (the 'subjective component')." *Hamilton v. Eleby*, 341 F. App'x 168, 171 (6th Cir. 2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "Prison work assignments are considered conditions of confinement subject to scrutiny under the Eighth Amendment." *Jones v. Michigan*, 698 F. Supp. 2d 905, 915 (E.D. Mich. 2010) (citing *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993)). And "'[d]eliberate indifference' is a state of mind akin to criminal recklessness: 'the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001)).

The parties here do not appear to dispute that Vanheck has adequately pled the objective components. Vanheck alleges that he was incarcerated under conditions posing a substantial risk of serious harm when he was ordered to work on the Machine despite his obvious and known

12

mental limitations. [DE 64 at ¶¶ 10–15]. Defendants' motion and reply focus exclusively on whether Vanheck has established that Brady and Langford acted with deliberate indifference. [DE 65-1 at 624–28; DE 74 at 721–22].

To support this argument, Defendants rely on *Jones*, in which the court found that prison officials were not deliberately indifferent despite the plaintiff's allegations that he told prison officials of his physical limitations before they assigned him to a job requiring heavy lifting and long periods of standing. 698 F. Supp. 2d at 913–15. But *Jones* is distinguishable. First, because *Jones* was decided at the summary judgment stage, the court had an extensive record on which to rely in determining whether the plaintiff could show deliberate indifference. Second, the court relied on the fact that the plaintiff's work assignment was "light duty" and not inherently dangerous, as well as the lack of proof that the prison officials read the medical report outlining the plaintiff's limitations. *Id.* at 914. Because Defendants here seek to dismiss the Eighth Amendment claim before discovery, the circumstances surrounding Vanheck's work assignment and later injuries are comparatively unclear.

At this stage of the proceeding, Vanheck's complaint must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), by alleging "enough facts to state a claim to relief that is plausible on its face," *Traverse Bay Area Intermediate Sch. Dist.*, 615 F.3d at 627 (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 570). The complaint alleges that Brady, Langford, and employees under their control were aware of Vanheck's mental limitations; they could reasonably infer that ordering an inmate with limited mental capabilities and no training to work unsupervised on a large and dangerous machine would lead to a substantial risk of serious harm; and they drew that inference. [DE 64 at ¶¶ 10–33]. It supports these allegations by highlighting that the Machine was not designed for persons

to work on top of or around in the manner Vanheck was directed, that prison officials did not provide Vanheck with safety equipment, that Vanheck had diagnosed mild mental retardation and attention deficit disorder, and that Defendants were aware of Vanheck's limited mental capacity at the time of the incident. [*Id.* at ¶¶ 10–12, 15]. These facts are enough to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Defendants' motion is therefore denied as to Count II against Brady and Langford.

## CONCLUSION

For the reasons set forth above, and being otherwise sufficiently advised, **THE COURT HEREBY ORDERS** that Defendants' Second Motion to Dismiss [DE 65] is **GRANTED IN PART and DENIED IN PART**.

(1) Defendants' Motion to Dismiss Vanheck's negligence and/or gross negligence claims against Brady and Langford in their official capacities is **GRANTED**;

(2) Defendants' Motion to Dismiss Vanheck's negligence and/or gross negligence claims against Brady and Langford in their individual capacities is **DENIED**;

(3) Defendants' Motion to Dismiss Vanheck's Eighth Amendment claims against Brady and Langford is **DENIED**; and

(4) Defendants' Motion to Dismiss Vanheck's Eighth Amendment claims against Marion County, Kentucky, and Washington County, Kentucky is **GRANTED**.

Rebecca Grady Jennings, District Judge
United States District Court

Copies to: Counsel of record

June 28, 2019

14